Rockingham
No. 2009-533

ONE BEACON INSURANCE, LLC

v.

M&M PIZZA, INC.

Argued: May 4, 2010
Opinion Issued: August 19, 2010

*Orr & Reno, P.A.*, of Concord (*Jeremy D. Eggleton* on the brief and orally), for the plaintiff.

*Boyle, Morrissey & Campo, P.C.*, of Manchester (*Thomas J. Fay* and *Andrew B. Ranks* on the brief, and *Mr. Fay* orally), for the defendant.

DUGGAN, J. The defendant, M&M Pizza, Inc., appeals an order of the Superior Court (*McHugh*, J.), denying its motion for summary judgment and granting summary judgment in favor of the plaintiff, One Beacon Insurance, LLC. We affirm in part, reverse in part, and remand.

The following facts appear in the trial court's order on the parties' motions for summary judgment. M&M owns and operates a Domino's Pizza franchise located in a strip mall at 61 Crystal Avenue in Derry. Centercorp Retail Properties, Inc. owns the property and is M&M's commercial landlord. In November 2002, Nathaniel Box, an M&M employee, slipped and fell behind the premises. During the evening dinner rush, M&M required its delivery employees to park behind the mall and enter through the rear door of the pizzeria. In compliance with this policy, after returning

from a pizza delivery, Box parked near the rear door to the pizzeria. While walking around the front of his vehicle, he slipped and fell on ice and was injured.

Box sued Centercorp and other parties, but did not sue M&M. Following mediation, Centercorp settled with Box. One Beacon, Centercorp's insurer and subrogee, paid Box $185,000 to release his claims against Centercorp. Although One Beacon invited M&M to attend the mediation, M&M declined to do so. Subsequently, One Beacon brought suit against M&M, seeking indemnification for payments it made to Box on behalf of Centercorp. M&M moved for summary judgment, and One Beacon filed a cross-motion for summary judgment. The trial court granted judgment in favor of One Beacon. The trial court denied M&M's motion for reconsideration, and this appeal followed.

When reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and inferences properly drawn from them, in the light most favorable to the non-moving party. *S. N.H. Med. Ctr. v. Hayes*, 159 N.H. 711, 715 (2010). If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

M&M raises two arguments on appeal: (1) that its lease with Centercorp did not require it to indemnify One Beacon for Box's injuries; and (2) that, although M&M did not attend the mediation between Centercorp and Box, M&M did not waive its right to challenge the subsequent settlement. We address each of M&M's arguments in turn.

First, M&M argues that section seventeen of the lease does not require it to indemnify One Beacon for Box's injuries because they occurred outside the pizzeria, and neither Box's, nor M&M's, action involved the use or operation of the premises at the time of his injury. One Beacon counters that indemnification is required under section seventeen because: (1) Box's delivery work was an integral part of M&M's pizza operations; (2) Box was employed by M&M; (3) Box was acting within the scope of his employment when he was injured; and (4) Box parked behind the rear entrance pursuant to M&M policy.

■ The interpretation of the language of a lease, like any contract language, is ultimately an issue for the court to decide. *Cf. Merchants Mut. Ins. Co. v. Laighton Homes*, 153 N.H. 485, 487 (2006); *Gulf Ins. Co. v. AMSCO*, 153 N.H. 28, 34 (2005) ("When there is an express contract for indemnity, the rights of the surety are not to be determined by general indemnity principles, but by the letter of the contract for indemnification.").

Because the interpretation of a contract is a question of law, we review the trial court's interpretation *de novo*. *In the Matter of Taber-McCarthy & McCarthy*, 160 N.H. 112, 115 (2010). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Id.*

Absent ambiguity, we determine the parties' intent from the plain meaning of the language used in the contract. *Id.* The words and phrases used by the parties will be assigned their common meaning, and we will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person. *Found. for Seacoast Health v. HCA Health Servs. of N.H.*, 157 N.H. 487, 492 (2008). We construe express indemnity agreements narrowly, *Dunn v. CLD Paving*, 140 N.H. 120, 122 (1995), particularly when they purport to shift responsibility for an entity's negligence to another. *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 12 (1995).

Section seventeen of the lease provides that M&M must "indemnify and save [Centercorp] harmless from and against any and all liability and damages, costs and expenses, including reasonable counsel fees, and from and against any and all suits, claims and demands of any kind or nature . . . growing out of the condition, maintenance, repair, alteration, use, occupation or operation of the leased premises." We have interpreted the phrase "growing out of" as synonymous with "arising out of." *Pro Con Constr. v. Acadia Ins. Co.*, 147 N.H. 470, 472 (2002); *see also Philbrick v. Liberty Mut. Fire Ins. Co.*, 156 N.H. 389, 391 (2007).

In *Pro Con*, we examined a commercial general liability policy, which provided that:

> WHO IS AN INSURED is amended to include as an insured any person or organization for whom you are performing operations if you and such person or organization have agreed in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.

*Pro Con*, 147 N.H. at 471. In *Pro Con*, we reasoned that, "to warrant coverage arising out of [the] ongoing operations performed for Pro Con, the ongoing operations need not have been the proximate cause of the injuries but the causal connection between the two must be more than tenuous." *Id.* at 472; *see also Akerley v. Hartford Ins. Group.*, 136 N.H. 433, 439 (1992). In other words, "some causal nexus must link [the] ongoing operations and

the injuries." *Pro Con*, 147 N.H. at 472. "While the causal connection need not be 'proximate' as that term is used in the more demanding evidentiary area of tort law, the causal connection must still exist." *Id.*

■ Applying this standard, the trial court here concluded that "Box's delivery mission and the location where he parked his car . . . were" governed by the indemnification provision because they were "circumstances 'growing out of the . . . use, occupation or operation of the leased premises.' " We agree. According to the lease, M&M used the premises as "a bakery, store, and carry-out for pizza and related foods and beverages and those items customarily sold . . . in a Domino's Pizza store and for all other operations necessary or incidental to the conduct of its business." Given that the pizzeria offered delivery services to its customers, "[t]he delivery of pizza and related products" was "an operation 'necessary or incidental to the conduct' " of the pizzeria. When Box was injured, he had parked his vehicle behind the mall pursuant to M&M policy, and was going back into the pizzeria to continue delivering pizzas. Accordingly, we agree that the nexus between the pizzeria's operations and Box's injuries trigger the broad indemnification provision of the lease agreement. *See id.*

M&M, pointing to other lease provisions, contends that they "effectively set out a comprehensive liability scheme where M&M is responsible for anything imaginable occurring within the leased premises while Centercorp retains responsibility for liability outside the leased premises." Specifically, M&M relies upon the preamble to the lease, which defines the leased premises as "a portion of the premises located at 61 Crystal Ave., Derry, NH 03038, the leased premises consisting of 1,088 Sq. Ft. +/-." M&M also highlights other lease provisions, which require Centercorp to provide snow and ice removal and general maintenance in certain common areas, and the insurance provision of the lease, which only requires M&M to obtain liability insurance " 'on the leased premises.' " One Beacon counters that these other provisions in the lease do not modify the plain language of section seventeen.

The trial court rejected M&M's argument that "other provisions of the [l]ease foreclose [its] indemnification liability." As noted by the trial court, even though the lease required M&M to retain "[c]omprehensive liability insurance on the leased premises and the Facilities thereon," the broad and unambiguous language of the indemnity clause still required M&M to indemnify Centercorp for "liability and damages, costs and expenses . . . growing out of the condition, maintenance, repair, alteration, use, occupation or operation of the premises." We decline to dismiss the broad language of "growing out of" as "mere surplusage." *See Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623 (1980).

■ Similarly, even though other lease provisions require Centercorp to maintain certain common areas, these independent obligations do not eliminate M&M's obligation to indemnify Centercorp. *See Tanguay v. Marston,* 127 N.H. 572, 578 (1986). We have noted that:

> a lessor and lessee in a lease of commercial real estate may agree on which party will maintain the leased premises and which party will be liable for injuries caused by improper failure to maintain. Both parties to the commercial lease must be free to make their own bargain. We recognize that a lease of commercial real estate is in many ways much like any other commercial contract, where we allow the parties to assign risks and obligations between themselves.

*Id.* (citations omitted).

We next consider M&M's argument that One Beacon never offered M&M the opportunity to approve the settlement or defend the case, contrary to *Morrissette v. Sears, Roebuck & Co.,* 114 N.H. 384, 388 (1974). M&M asks us to remand this case to the trial court and to require One Beacon to prove Centercorp's actual liability to Box. One Beacon, however, maintains that the principles of *Morrissette* do not apply to express contractual indemnification agreements such as the lease, and, alternatively, that, pursuant to *Morrissette,* its letter requesting M&M's presence at the mediation provided M&M with notice and an opportunity to defend.

■ "A right to indemnity arises where one is legally required to pay an obligation for which another is primarily liable." *Id.* at 387 (quotation and brackets omitted). In New Hampshire, "an indemnitee's unilateral acts of settlement, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements." *Coco v. Jaskunas,* 159 N.H. 515, 520 (2009) (quotation and brackets omitted). Accordingly, "[w]hile a prejudgment payment in settlement does not extinguish a right of indemnity, the [third-party plaintiff] must show that the settlement was made under legal compulsion, rather than as a mere volunteer, for indemnity is not available for payment voluntarily made." *Id.* (quotation and citation omitted).

> If the indemnitor approves the settlement or defends unsuccessfully against the original claim, he cannot later question the indemnitee's liability to the original claimant. If the indemnitor declines to take either course, then the indemnitee will only be required to show *potential liability* to the original plaintiff in order to support his claim over against the indemnitor.

*Id.* "In the event that no offer is made to the indemnitor to either approve or defend, then the indemnitee should have the burden of showing actual liability to the original plaintiff." *Morrissette,* 114 N.H. at 389 (citations omitted). Thus, absent notice and the opportunity to defend, One Beacon must demonstrate Centercorp's actual liability to Box; however, if M&M received notice and an opportunity to defend, then One Beacon need only show Centercorp's potential liability to Box. *See id.*

Counsel for Centercorp sent a letter, dated July 19, 2007, to M&M, indicating that Box's lawsuit against Centercorp was scheduled for mediation on August 8. In the letter, Centercorp asked M&M to "attend with authority to contribute money toward the settlement of this case." Centercorp asserted that, under the lease, M&M "is contractually required to indemnify Centercorp for its legal costs and damages incurred in defending this case." Centercorp also notified M&M that it "intend[ed] to bring a third party action against [M&M] to seek recovery of any amounts it is required to pay . . . Box."

In its order on the parties' motions for summary judgment, the trial court ruled that:

> Despite being notified of the conference at which Centercorp and its subrogee, One Beacon, settled the responsibilities as among the parties to the underlying personal injury suit, M&M declined to appear at or participate in that conference. M&M thus passed up its opportunity to dispute the amount offered to Box, and must therefore indemnify Centercorp and its subrogee One Beacon for the full amount paid.

We agree with the trial court that, based upon the facts before us, One Beacon's letter to M&M gave M&M sufficient notice and an opportunity to defend the suit against Box. However, the trial court erred when it ruled that M&M was therefore required to indemnify One Beacon "for the full amount paid," because the trial court failed to require One Beacon to demonstrate Centercorp's potential liability to Box. *See id.* On remand, the trial court should apply the standard set forth in *Morrissette* and determine whether One Beacon has demonstrated Centercorp's potential liability to Box. *See id.*

One Beacon argues that the principles outlined in *Morrissette* do not apply to express indemnification agreements, such as the lease at issue here. Specifically, One Beacon argues that "*Morrissette* involved a common law or implied indemnification," and that "the notice standards it enunciates have never been applied in a contractual indemnification scenario like the one in this case." However, we did not limit our decision in *Morrissette* to

implied indemnification, and we see no reason why we should do so here. Indeed, we have applied the standards set forth in *Morrissette* in the context of an express statutory requirement for the defendant to defend the plaintiffs' deed "against the lawful claims and demands of all persons" pursuant to RSA 477:27. *Coco*, 159 N.H. at 519 (emphasis omitted). We also note that, in attempting to distinguish express and implied indemnification with respect to the applicability of the *Morrissette* standard, One Beacon cites no authority in which another court has made such a distinction, and we have found none. *See Casey v. Ryder Truck Rental, Inc.*, 2005 WL 1150228, at \*8 (E.D.N.Y. May 16, 2005) (noting that requiring notice and an opportunity to defend "appear[s] to apply regardless of whether . . . indemnification arises in the context of a contractual provision or in the context of a claim based on common law equitable principles").

Given this result, we need not address the parties' remaining arguments.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.