[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, Slip Opinion No. 2020-Ohio-6821.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6821

WILDCAT DRILLING, L.L.C., APPELLEE, *v.* DISCOVERY OIL AND GAS, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, Slip Opinion No. 2020-Ohio-6821.]

*Contracts—Indemnification—Parties have a fundamental right to contract, which includes the right to abrogate the common law—The requirements set out in* Globe Indemn. Co. v. Schmitt *do not apply when the parties express a clear intent to abrogate those common-law requirements—Court of appeals applied the* Globe Indemn. Co. *requirements without considering whether the parties abrogated those requirements in their contract—Judgment reversed and cause remanded to the trial court.*

(No. 2019-0222—Submitted April 8, 2020—Decided December 22, 2020.)

APPEAL from the Court of Appeals for Mahoning County,

No. 17 MA 0018, 2018-Ohio-4015.

_____

FRENCH, J.

{¶ 1} We accepted the discretionary appeal of appellant, Discovery Oil and Gas, L.L.C. ("Discovery"), to consider whether the common-law requirements set out in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), for determining whether an indemnitee may recover against an indemnitor when the indemnitee has settled a claim without the indemnitor's involvement, apply even when the rights of the parties are governed by a contract that includes an indemnification provision. Because parties have a fundamental right to contract, which includes the right to abrogate the common law, we conclude that the *Globe Indemn. Co.* requirements do not apply when the parties express a clear intent to abrogate those common-law requirements. Because the Seventh District Court of Appeals applied the *Globe Indemn. Co.* requirements in this case without considering whether the parties abrogated those requirements in their contract, we reverse its judgment. And, because the trial court also did not consider whether the parties' contract expresses a clear intent to abrogate the common law on indemnification, we remand this matter to the trial court for further proceedings.

## I. Background

*A. Discovery and Wildcat enter into a contract for Wildcat to drill an oil and gas well for Discovery*

{¶ 2} Discovery entered into a contract with appellee, Wildcat Drilling, L.L.C. ("Wildcat"), for Wildcat to drill an oil and gas well for Discovery. The contract included several provisions relating to indemnification. Generally, Wildcat was required to indemnify Discovery against any fine or penalty that resulted from pollution or contamination relating to the well. The contract specifically stated the following:

17. **Responsibility for Loss or Damage.**

* * *

2

**17.9. Pollution and Contamination** – Notwithstanding anything in the Contract to the contrary, excepting only Paragraph 13, it is understood and agreed by and between [Wildcat] and [Discovery] that the responsibility for pollution and contamination shall be as follows:

**17.9.1** *[Wildcat] Liability* – [Wildcat] shall assume full responsibility for and shall defend, indemnify, and hold [Discovery] and its joint owners harmless from and against any loss, damage, expense, claim, fine and penalty, demand, or liability for pollution or contamination, including control and removal thereof, that ordinates on or above the surface of the land or water from spills, leaks, or discharges of motor fuels, lubricants, and oils; pipe dope; paints and solvents; ballast, bilge, sludge, and garbage; and other liquids or solids in possession and control of [Wildcat]. These obligations are assumed without regard to the negligence of any party or parties.

**\* \* \***

**17.11 Indemnity Obligations** – Except as otherwise expressly limited in this Contract, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under the terms of this Contract will be without limit and without regard to the cause or causes thereof (including pre-existing conditions), strict liability, or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive \* \* \*.

(Boldface and underlining sic.) After the parties had entered into the contract, Wildcat began drilling an oil and gas well for Discovery in late 2014.

*B. The Ohio Department of Natural Resources discovers Wildcat's illegal use of brine water*

{¶ 3} In early 2015, an inspector with the Ohio Department of Natural Resources ("ODNR") determined that Wildcat had violated Ohio law by improperly using brine water in its drilling operations. ODNR notified Discovery of the violation. Several months later, Discovery met with ODNR and agreed to pay a $50,000 fine relating to Wildcat's use of brine water in its drilling operations. Discovery then refused to pay any portion of the invoice owed to Wildcat until Wildcat agreed to indemnify it for the ODNR fine.

*C. The parties sue each other for breach of contract*

{¶ 4} Wildcat sued Discovery for breach of contract for Discovery's failure to timely pay the invoice for Wildcat's completed work. Discovery answered Wildcat's complaint and asserted counterclaims for breach of contract and civil liability for criminal conduct, based on Wildcat's illegal use of brine water and its refusal to indemnify Discovery for the ODNR fine.

{¶ 5} The parties filed competing motions for summary judgment. Discovery argued that Wildcat was required under the terms of the contract to indemnify Discovery for the ODNR fine it had incurred due to Wildcat's illegal use of brine water in its drilling operations. Wildcat argued that Discovery's indemnification claim failed under this court's decision in *Globe Indemn. Co.*, 142 Ohio St. 595, 53 N.E.2d 790, and its progeny, because Discovery had failed to provide Wildcat with notice of the ODNR claim prior to Discovery's payment of the fine to ODNR. Wildcat complained that it was deprived of the opportunity to defend against the purported violation. Based on that lack of notice, Wildcat maintained that it was under no duty to defend, indemnify, or hold Discovery harmless from the ODNR claim.

{¶ 6} Discovery countered that the plain language of the contract did not require it to give Wildcat notice of the ODNR claim and instead obligated Wildcat

4

to indemnify Discovery for any fine or penalty relating to pollution or contamination. Discovery further argued that this court's holding in *Globe Indemn. Co.* did not apply because that case dealt with principles of common-law indemnity, not contractual indemnity. And Discovery maintained that even if *Globe Indemn. Co.* did apply, Wildcat knew of the ODNR claim prior to Discovery's payment of the fine.

{¶ 7} The trial court granted both parties' motions for summary judgment, finding that each party had breached the contract. According to the trial court, Discovery had breached the contract by failing to timely pay Wildcat's invoice. And Wildcat had breached the contract by causing Discovery to pay a fine to ODNR as a result of Wildcat's drilling practices. The trial court determined that Wildcat had known of the compliance issues with ODNR and that it could not claim that it did not have an opportunity to challenge the allegations prior to Discovery's payment of the fine. The trial court then ordered Discovery to pay Wildcat the amount of the invoice, less the amount of the fine and Discovery's expenses, and to pay prejudgment interest pursuant to the contract. The trial court's judgment entry did not address whether the parties' contract expressed an intent to abrogate the common-law *Globe Indemn. Co.* requirements. It simply concluded that Discovery was entitled to indemnification.

### D. The parties appeal to the Seventh District Court of Appeals

{¶ 8} Both Discovery and Wildcat appealed the trial court's judgment to the Seventh District Court of Appeals. The appellate court reversed the trial court's judgment as to the indemnification issue, holding that Wildcat is not required to indemnify Discovery because Discovery did not provide Wildcat with the notice required to be entitled to indemnification. 2018-Ohio-4015, 121 N.E.3d 65, ¶ 69-71.

{¶ 9} Applying *Globe Indemn. Co.*, the Seventh District determined that Discovery could be entitled to indemnification only if (1) it had given proper and

timely notice to Wildcat of the ODNR claim, (2) it was legally liable to respond to the settled claim, and (3) the settlement was fair and reasonable. *Id.* at ¶ 61, 69. Because Discovery had not notified Wildcat of the ODNR claim or of its intent to settle the claim, the court of appeals concluded that Discovery was not entitled to indemnification. *Id.* at ¶ 69.

*E. Discovery appeals to the Supreme Court of Ohio*

**{¶ 10}** Discovery appealed to this court, raising four propositions of law. We accepted jurisdiction over Discovery's second proposition of law, which states: "Contractually-negotiated indemnification clauses are not subject to the common law *Globe* indemnification requirements." *See* 155 Ohio St.3d 1463, 2019-Ohio-1817, 122 N.E.3d 1285.

## II. Analysis

**{¶ 11}** The issue before this court is whether the requirements set out in *Globe Indemn. Co.*, 142 Ohio St. 595, 53 N.E.2d 790, for determining whether an indemnitee may recover against an indemnitor when the indemnitee has settled a claim without the indemnitor's involvement, apply when the parties' rights are governed by a contract that includes an indemnification provision.

*A.* Globe Indemn. Co. *and its progeny set out Ohio's common law on*
*indemnification*

**{¶ 12}** In *Globe Indemn. Co.*, this court, "[a]s a concluding observation," determined that the right to indemnification against an actual wrongdoer exists when the individual proceeded against in the first instance settles the loss voluntarily or has a judgment recovered against him. *Id*. at 604. The court expressed that an indemnitee's voluntary payment does not negate the right to indemnification. *Id.* Rather, in order to be entitled to indemnification after a voluntary settlement, the indemnitee must prove that (1) proper and timely notice was provided to the indemnitor, (2) the indemnitee was legally liable to respond,

and (3) the settlement was fair and reasonable. *Id.*, citing *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 21, 5 A.2d 153 (1939).

{¶ 13} This court has followed and applied *Globe Indemn. Co.* in other cases relating to indemnification, and it has expressly applied the *Globe Indemn. Co.* requirements to determine whether a party has a right to indemnification. *See New York Cent. R. Co. v. Linamen*, 171 Ohio St. 87, 88, 167 N.E.2d 778 (1960) (plaintiff did not establish a right to recover because plaintiff did not allege or prove that notice was provided to the defendant prior to settlement or prove that the settlement was fair and reasonable); *Aetna Cas. & Sur. Co. v. Hensgen*, 22 Ohio St.2d 83, 93, 258 N.E.2d 237 (1970) (*Globe Indemn. Co.* does not apply when the right to indemnification is not at issue); *see also Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 16, 623 N.E.2d 30 (1993). Therefore, this court's "concluding observations" in *Globe Indemn. Co.* at 604, and the three indemnification requirements set out in that case are not dicta; they are the common-law indemnification requirements in Ohio.

*B. Parties may contract to abrogate the common-law* Globe Indemn. Co.

*requirements*

{¶ 14} We have recognized that parties "have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987); *see also Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8; *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301 (1967). To that end, parties to a contract may include contractual terms that abrogate the common law. *Paul Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 30. "[B]ut the intent to do so must be clearly indicated." *Id.* This principle applies to contractual indemnification agreements. As we have recognized, the "nature of an indemnity relationship is determined by the intent of the parties as expressed by the language

used" in the agreement. *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987). We cannot ascertain the parties' intent without looking at the words that they used to express their intent. *Kelly v. Med. Life. Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987) ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement").

{¶ 15} The contract here does not say unequivocally that Wildcat and Discovery intended to abrogate Ohio's common-law indemnification requirements. Nor does it say that Discovery can voluntarily settle a claim without first giving Wildcat notice of the claim or that Discovery can settle a claim for any amount it chooses, even if that amount is unreasonable. To be sure, no talismanic or magical language is required in order to abrogate the common law through a contract. Rather, the focus is on the parties' intent, as expressed by the language the parties chose to use in their contract. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 (the court's "role is to give effect to the intent of the parties," which is presumed to be reflected in the contract's language); *In re All Kelley & Ferraro Asbestos Case*s, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29; ("In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ"); *Worth* at 240 (the nature of the indemnity relationship depends on the intent of the parties, as expressed by the language in the contract). If the language used in the parties' contract evinces a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements, the contract should be applied as written and the indemnitor must indemnify the indemnitee under the terms of the agreement. *See Allen v. Std. Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982), paragraph one of the syllabus.

{¶ 16} The second dissenting opinion suggests that we are concluding that the common law can supplant the negotiated terms in a contract or that we are requiring that the contract contain an explicit rejection of the common law in order

for the parties to abrogate the common law on indemnification. We are doing neither of those things. The common law on indemnification cannot supplant clear terms contained in a contract. Our primary objective in construing a contract is to give effect to the parties' intent. *Kelley & Ferraro Asbestos Case*s, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, at ¶ 29. If the parties intend to abrogate the common law on indemnification, we must honor that intent. But while, here, the dissent assumes an intent in the contract to derogate from the common law regardless of whether the contract reflects that intent, instead a court must look to the contractual language to ascertain and give effect to the parties' intent. And as we have already said, no talismanic or magical language is required to express a clear intent to abrogate the common law.

{¶ 17} Here, no court has analyzed the parties' contract to determine if it evinces a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements. The trial court's judgment entry contains no analysis on that issue. The trial court simply concluded that Discovery is entitled to indemnification. The court of appeals concluded that the *Globe Indemn. Co.* requirements apply regardless of the terms of the parties' contract. We decline to conduct that analysis in the first instance and limit our review to the proposition of law that we accepted. We remand the matter to the trial court for further proceedings so that it may consider whether the parties intended to abrogate the common-law requirements on indemnification.

### III. Conclusion

{¶ 18} Because the Seventh District Court of Appeals applied the *Globe Indemn. Co.* requirements here without considering whether the parties abrogated those requirements in their contract, we reverse its judgment. Because no court has interpreted the parties' contract to determine if it expresses a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements, we remand this matter to the trial court for further proceedings.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and STEWART, J., concur.

KENNEDY, J., concurs in judgment only in part and dissents in part, with an opinion.

FISCHER, J., dissents, with an opinion joined by DEWINE, J.

DONNELLY, J., dissents, with an opinion.

_____

**KENNEDY, J., concurring in judgment only in part and dissenting in part.**

{¶ 19} Because this court's tort-liability case, *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), does not control the disposition of this contract case, I concur in the court's judgment reversing the judgment of the Seventh District Court of Appeals. However, there are still genuine issues of material fact precluding a grant of summary judgment in this case, and I would remand this matter to the trial court to resolve those issues in the first instance. I therefore concur in judgment only in part and dissent in part.

### *Globe Indemn. Co.*

{¶ 20} Our decision in *Globe Indemn. Co.* involved the right to indemnification between joint tortfeasors. In that case, John Shillito Company ("Shillito") contracted with Alois Schmitt to clean beneath iron grates in the sidewalk adjacent to Shillito's department store. *Id.* at 595-596. While cleaning, Schmitt removed an iron grate from the sidewalk, leaving the opening "unprotected and unguarded," and a pedestrian fell through the opening, suffering serious injury. *Id.* at 596. Shillito's insurer, Globe Indemnity Company, gave Schmitt notice of its intent to settle the matter, but Schmitt did not respond. *Id.* at 596-597. Globe Indemnity entered a settlement with the pedestrian and, on the basis that it had

10

become subrogated to any right of Shillito's, sought indemnification from Schmitt. *Id*. at 597.

{¶ 21} This court noted the rule that joint tortfeasors may not seek indemnification or contribution from each other, but it explained that this rule applies when the joint tortfeasors had been actively negligent. *Id*. at 599-600. We determined that Schmitt had been actively negligent and was primarily liable, while Shillito had been passively negligent and was secondarily liable as the landowner. *Id*. at 603. This court concluded that a right to indemnification existed:

> While, then, the occupier of premises, who maintains a covered aperture in the sidewalk adjacent to his property, and another, who removes the cover and thereafter leaves the opening unprotected and unguarded, are equally liable to a pedestrian, who without fault steps into the opening and is injured, yet, as between the two first designated, the former is entitled to rely on the latter to act in a careful and prudent manner, and in the event the former pays damages to the injured person has the right to indemnity.

*Id.* at 603.

{¶ 22} However, this court did not stop there but also offered "a concluding observation," stating that "the fact of voluntary payment does not negative the right to indemnity. However, the one seeking indemnity, after making voluntary settlement, must prove that he has given proper and timely notice to the one from whom it is sought, that he was legally liable to respond and that the settlement effected was fair and reasonable." *Globe Indemn. Co.*, 142 Ohio St. at 604, 53 N.E.2d 790.

{¶ 23} This concluding statement is dicta. The requirements for preserving a right to indemnification were not at issue, and the only question was whether

indemnification was proper in the first place. Moreover, *Globe Indemn. Co.* is distinguishable from this case on its facts, because it concerned joint tortfeasors while the case before us involves parties to an express indemnification clause in a contract. *Globe Indemn. Co.* therefore does not control our decision today. And because the parties do not present some other basis in contract law requiring us to determine that both advance notice of a settlement and that the settlement was reasonable are prerequisites to recovery under an express indemnification clause, we need not decide that question on our own initiative in the first instance.

**Summary Judgment**

{¶ 24} The fact that *Globe Indemn. Co.* is inapplicable here does not end the analysis. This case comes to us following the Seventh District's reversal of the trial court's grant of summary judgment, and our review is de novo, *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 11. Summary judgment may be granted when "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). In reviewing a motion for summary judgment, we construe the evidence in favor of the nonmoving party and summary judgment may be rendered when reasonable minds can come only to a conclusion that is adverse to the nonmoving party. *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 8.

{¶ 25} The indemnification clause in this case provides that appellee, Wildcat Drilling, L.L.C.,

> shall assume full responsibility for and shall defend, indemnify, and
> hold [appellant, Discovery Oil and Gas, L.L.C.,] and its joint owners
> harmless from and against any loss, damage, expense, claim, fine
> and penalty, demand, or liability for pollution or contamination,
> including control and removal thereof, that ordinates on or above the

12

surface of the land or water from spills, leaks, or discharges of * * *
liquids or solids in possession and control of [Wildcat Drilling].
These obligations are assumed without regard to the negligence of
any party or parties.

{¶ 26} The contractual language does not make Wildcat Drilling strictly liable for every loss that Discovery Oil and Gas suffers. Rather, Wildcat Drilling is responsible for loss from contamination or pollution caused by the discharge of a liquid under Wildcat Drilling's possession and control. Discovery Oil and Gas therefore must establish that Wildcat Drilling is responsible for the pollution or contamination that caused loss before it may recover under the contract's indemnification clause. *See, e.g.*, *One Beacon Ins., L.L.C. v. M & M Pizza, Inc.*, 160 N.H. 638, 644, 8 A.3d 18 (2010) (when the indemnitor is not given notice and the opportunity to defend, the indemnitee must demonstrate actual liability); *Valloric v. Dravo Corp.*, 178 W.Va. 14, 19, 357 S.E.2d 207 (1987) (same); *id.* at fn. 8 (citing cases); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir.2014) ("a claim for contractual indemnification only accrues once the indemnitee has suffered a loss"). If Discovery Oil and Gas proved that Wildcat Drilling was responsible for the violation, Wildcat Drilling would have to indemnify Discovery Oil and Gas regardless of whether notice and an opportunity defend had been given.

{¶ 27} Wildcat Drilling presented evidence to establish a genuine issue of material fact regarding whether it was responsible for the fine imposed by ODNR. In the notice of the violation, ODNR's inspector, Fred Romeo, stated that "while the drilling rig was circulating the casing bottoms up with the mud pump using fluid from the drilling pits to condition the hole for cementing the surface casing," he discovered excessive salinity in "the fluid circulating through the casing and from the borehole." This violated Ohio law, he explained, because only air, fresh water,

or "freshwater based mud" may be used when drilling through an underground source of drinking water. Although the notice of the violation does not expressly state that Wildcat Drilling caused the contamination, a reasonable inference from the notice is that Romeo determined that the contamination had occurred during drilling and that Wildcat Drilling was responsible for the contamination.

{¶ 28} In response, Wildcat Drilling presented the deposition testimony of John Howell, who supervised the drilling project on the day that the alleged violation was discovered. He acknowledged that it is illegal to use brine while drilling a surface hole. He also admitted that the drilling crew had put saltwater into the drilling system's mud pump to keep the drilling equipment from freezing up in the cold weather. However, Howell stated that his crew had not put brine into the surface hole while drilling it. Instead, they had circulated saltwater only through the pump and into the "rathole" (which is a separate, shallower hole containing the apparatus used to turn the drill bit and which is coated with an impervious material to prevent contamination of the water table). The brine then passed through a ditch and into a retention pit, which had a liner to protect groundwater. Howell explained that the only way that the ONDR inspector could have taken a sample that contained saltwater was if he took the sample from the ditch—Howell disputed that the sample had come from the main hole. He believed that he had seen the inspector take a sample from the pit and he testified that it was not possible for the inspector to have taken a sample from the main hole during the drilling stage.

{¶ 29} Howell testified that during the time that the inspector said that he had taken the sample, the cementer had already "hooked up to the main hole." Howell pointed out that if the inspector had in fact tested the surface casing and found brine in the main hole, that sample would have been taken after Wildcat Drilling had moved off the well and a separate crew of cementers hired by Discovery Oil and Gas had control of the well. Similarly, Richard Liddle, a petroleum engineer and the president of Wildcat Drilling, testified that the cementer

could have pumped saltwater down the main hole. And the notice of the violation itself indicated that saltwater was being pumped into the main hole to condition it for cementing.

{¶ 30} There is a genuine factual dispute regarding whether Wildcat Drilling used saltwater in the main hole while drilling through an underground source of drinking water and was therefore responsible for the contamination. For this reason, summary judgment on Discovery Oil and Gas's claim for indemnification is inappropriate.

{¶ 31} I therefore concur in the court's judgment to reverse the court of appeals' judgment in favor of Wildcat Drilling, but I would remand this matter to the trial court to resolve the questions of fact that remain in this case.

_____

**FISCHER, J., dissenting.**

{¶ 32} It has been a longstanding principle of Ohio law that parties have a fundamental right to contract freely with the expectation that the terms of their contract will be enforced. But today, the lead opinion concludes that the common law may supplant the terms in a negotiated contract entered into between two sophisticated parties when that contract does not *explicitly* derogate from the common law. Because I believe that the parties, who entered into a contract with an express indemnification provision, clearly indicated that they wanted to be governed by the negotiated terms of their contract and not the common-law requirements set forth in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), I must respectfully dissent.

**The requirements of *Globe Indemn. Co.* should not apply when there is an express indemnification provision in a contract that governs the rights of the parties**

{¶ 33} "Indemnity arises from contract, either express or implied, and it is the right of a person, who has been compelled to pay what another should have

paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987); *see also Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 16, 623 N.E.2d 30 (1993). In cases of implied indemnity, otherwise known as common-law indemnity, the rights of the parties arise on account of the negligent or otherwise tortious act of another. *Maryland Cas. Co. v. Frederick Co.*, 142 Ohio St. 605, 607, 53 N.E.2d 795 (1944). "This right of indemnity is based upon the principle that everyone is responsible for his [or her] own negligence, and if another person has been compelled by the judgment of a court having jurisdiction to pay the damages which ought to have been paid by the wrongdoer[, then] they may be recovered from him [or her]." *Id.*

**{¶ 34}** Contractual indemnification arises from a contract between the parties in which the indemnitor promises to indemnify the indemnitee against liability for circumstances stated in the contract. *Worth* at 240. And the nature of the indemnity relationship is determined by the intent of the parties, as expressed by the language used in the contract. *Id.* When the indemnitor expressly agrees to indemnify an indemnitee, the indemnitor is obligated to indemnify the indemnitee under the terms of the contract. *Allen v. Std. Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982), paragraph one of the syllabus. That is because, in Ohio, parties "have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987); *see also Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8; *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301 (1967). Thus, when an indemnitor expressly agrees to indemnify an indemnitee, barring unusual circumstances or ambiguity in the contract, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement. *Allen* at paragraph one of the syllabus.

**{¶ 35}** Thus, because appellee, Wildcat Drilling, L.L.C. ("Wildcat"), and appellant, Discovery Oil and Gas, L.L.C. ("Discovery"), entered into a contract

with an express indemnification provision, the terms of that contract should govern the rights of the parties. The lead opinion, however, determines that an indemnification provision included in the contract does not preclude implied indemnification unless the contract explicitly states otherwise.

{¶ 36} The lead opinion has two problems in its analysis in this case. The first is that before *Globe Indemn. Co.* could apply, the court would first need to determine that the underlying issue itself is governed by principles of implied indemnification. Neither Wildcat nor Discovery raised any issue relating to implied indemnification—Discovery's entire claim is based on contractual indemnification, by which fault does not come into play by the express terms of the contract. Thus, the lead opinion essentially skips a step by saying that *Globe Indemn. Co.* may apply under the terms of the contract, when neither party raised a claim of implied indemnification.

{¶ 37} The second problem in concluding that common-law indemnification can supplement the terms of contractual indemnification is that such a conclusion will lead to chaos in interpreting contracts. If the parties to a contract negotiated for indemnification through terms less than what is required for common-law indemnification, then those terms of the contract, under the lead opinion's interpretation, would be meaningless. Parties who agreed to contractual indemnification provisions would always be bound by the common law unless they expressly stated otherwise.

{¶ 38} But in actuality, if the common law provides greater protections and the parties contract to lesser protections, what the parties are doing is indicating a *clear intent* to derogate from the common law. *See Paul Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 30 (parties to a contract may include terms in derogation of common law, but the intent to do so must be clearly indicated); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 256, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ("absent

statute or enforceable contract, litigants pay their own attorneys' fees"). This is why an express indemnification provision in a contract must govern the rights of the parties, unless that provision is ambiguous or otherwise unlawful. This is the only way that parties can fully understand and protect their rights under the contract. But the lead opinion effectively increases the parties' burdens from providing a *clear intent* to abrogate the common law to providing an *unequivocal statement*. That is, without an unequivocal statement to the contrary, notice will be required regardless of whether the contract includes that term or not. The lead opinion's recitation that the parties are free to negotiate the terms of a contract and that no talismanic language is required is contrary to its conclusion.

{¶ 39} The lead opinion's analysis can only be interpreted as reading a notice provision under *Globe Indemn. Co.* into an otherwise complete contract that does not explicitly and unequivocally reject the common law. I think the court should exercise greater caution before doing so. The parties to this contract included a merger clause stating that the contract is the complete and final agreement between the parties. As the lead opinion acknowledges, a notice provision was not a part of that agreement. Importantly, notice provisions are conditions precedent and they are not to be implied lightly. *See M3 Producing, Inc. v. Tuggle*, 2017-Ohio-9123, 91 N.E.3d 805, ¶ 14 (5th Dist.) (a condition precedent is a condition that must be performed before the obligations in the contract become effective). Accordingly, when the parties have not agreed to such a condition, I think that, however just it may be, we should be more reluctant to supply one.

{¶ 40} Therefore, I would conclude that the requirements set forth in *Globe Indemn. Co.* do not apply when the parties' rights are governed by an express indemnification provision in a contract, as the inclusion of such a provision is a clear intent to derogate from the common law. I would reverse the appellate court's judgment on that issue.

**Remand to the trial court is unnecessary because no other issues remain to be resolved in this case**

{¶ 41} The lead opinion remands the cause to the trial court to review the language of the contract, because the trial court's judgment entry contains no analysis on the notice issue. But the trial court clearly considered the terms of the contract and determined that Wildcat was "in breach of the contract for causing Discovery to pay a fine to the State of Ohio as a result of its drilling activities on the well," and the parties did not raise any issue whether the terms of the contract are ambiguous or contrary to law, or otherwise appeal the trial court's interpretation of the contract. Thus, any further review of the contract is beyond the scope of the appeal.

**Conclusion**

{¶ 42} Unless fraud or other unlawfulness exists, courts are powerless to save a competent person from the effects of his or her own voluntary agreement. *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, 46 N.E.3d 665, ¶ 37. The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to speak without restraint. *Nottingdale Homeowners' Assn., Inc.*, 33 Ohio St.3d at 36, 514 N.E.2d 702. It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. *Hope Academy Broadway Campus* at ¶ 37. Nor is it the responsibility of the court to revive waived arguments on appeal. Because the lead opinion creates a heightened standard of review for contracts with indemnification provisions by concluding that the *Globe Indemn. Co.* requirements may apply when the contract does not expressly and unequivocally state otherwise, and revives arguments that were fully adjudicated and not appealed, I must respectfully dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

**DONNELLY, J., dissenting.**

**{¶ 43}** The Seventh District Court of Appeals determined that appellant, Discovery Oil and Gas, L.L.C. ("Discovery"), could be entitled to indemnification only if (1) it had given proper and timely notice to appellee, Wildcat Drilling, L.L.C. ("Wildcat"), of the claim of the Ohio Department of Natural Resources ("ODNR"), (2) it was legally liable to respond to the settled claim, and (3) the settlement was fair and reasonable. 2018-Ohio-4015, 121 N.E.3d 65, ¶ 61, 69. That conclusion seems entirely reasonable and is consistent with our decision in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), which has been relied upon by parties litigating claims like those involved in this case for 75 years.

**{¶ 44}** I conclude that the imminently practical and reasonable requirements for indemnification set forth in *Globe Indemn. Co.* should apply whether or not there is an indemnification clause in a contract. If the parties to a contact intend to override those practical and reasonable requirements, they should do so expressly, not impliedly by merely including an indemnification clause. Going forward, a potential indemnitor willing to include indemnification language in a contract would be grossly negligent not to expressly include the *Globe Indemn. Co.* requirements in the contract. Certainly, an attorney who does not include those requirements for an indemnitor will, in my view, be liable for legal malpractice. So in reality, the harm that befalls Wildcat in this case will likely not be inflicted on many future parties in Wildcat's position. But that does little good for Wildcat here.

**{¶ 45}** The better course would be for this court to explicitly expand its holding in *Globe Indemn. Co.* and apply its requirements for indemnification to contracts that contain indemnification agreements. And here, we should conclude, in the words of *New York Cent. R. Co. v. Linamen*, 171 Ohio St. 87, 167 N.E.2d 778 (1960): "Since [Discovery] has neither alleged nor proved that any notice of [the ODNR fine] was given to [Wildcat] before its [payment of the fine] and [that

the payment] was fair and reasonable, [Discovery] has not established any right to recover its claimed loss in payment of that [fine]." Because the court determines otherwise, I dissent.

––––––––––––––––––

Manchester Newman & Bennett, L.P.A., David A. Detec, and Thomas F. Hull II, for appellant.

Johnson & Johnson Law Firm and Molly K. Johnson, for appellee.

––––––––––––––––––