[Cite as *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, 2022-Ohio-1125.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

WILDCAT DRILLING, LLC,

Plaintiff-Appellee,

v.

DISCOVERY OIL AND GAS, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0070**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 15 CV 1959

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Molly K. Johnson*, Johnson and Johnson, 12 W. Main Street, Canfield, Ohio, 44406 for Plaintiff-Appellee and

*Atty. David A. Detec, Atty. Thomas F. Hull II, Atty. Karly B. Johnson*, Manchester, Newman & Bennett, LPA, The Commerce Building, Atrium Level Two, 201 E. Commerce Street, Youngstown, Ohio 44503 for Defendant-Appellant.

Dated: March 31, 2022

**Robb, J.**

{¶1}    Defendant-Appellant Discovery Oil and Gas, LLC appeals the decision of the Mahoning County Common Pleas Court granting summary judgment for Plaintiff-Appellee Wildcat Drilling, LLC.  In a prior appeal of this case, we applied common law indemnification requirements and held Discovery Oil was not entitled to indemnification for a fine paid to the Ohio Department of Natural Resources (ODNR) for brine use during drilling because Discovery Oil failed to provide Wildcat Drilling notice or an opportunity to defend before settling with ODNR.

{¶2}    The Ohio Supreme Court remanded to the trial court with instructions to determine if the contract "evinces a clear intent to abrogate the common-law" requirements set forth in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944).  On remand, the trial court answered this question in the negative and thus concluded Discovery Oil was not entitled to contractual indemnification for the fine.  In the present appeal, Discovery Oil claims the parties intended to abrogate the common law indemnification requirement of notice before settlement and makes other arguments that are not relevant to the remanded issue.  For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶3}    Through a December 19, 2014 contract, Discovery Oil hired Wildcat Drilling to drill a well in Stark County beginning on December 31, 2014.  Discovery Oil was to pay any invoice within ten days or notify Wildcat Drilling of any dispute within five days and timely pay undisputed portions of the invoice.  The contract imposed indemnification obligations on Wildcat Drilling for fines and for other liabilities arising out of certain instances of pollution or contamination.

{¶4}    In early January of 2015, an ODNR inspector determined brine water was illegally used in the drilling operation.  Discovery Oil thereafter received a compliance notice but did not inform Wildcat Drilling due to a belief Wildcat Drilling's involvement would

"escalate tensions with [ODNR] and be counter-productive to negotiating a favorable settlement"). (Def. S.J. Mot., Ellenis Affidavit).

**{¶5}** On February 13, 2015, Wildcat Drilling issued an invoice for $190,350.37. On March 3, 2015, Discovery Oil attended a settlement meeting with ODNR (unbeknownst to Wildcat Drilling) and agreed to pay a $50,000 fine. Wildcat Drilling learned of the issue weeks later. Discovery Oil refused to pay any part of the invoice until Wildcat Drilling agreed to indemnify it for the fine, but this request was refused by Wildcat Drilling.

**{¶6}** On July 27, 2015, Wildcat Drilling filed a breach of contract complaint against Discovery Oil for failing to pay the invoice. Discovery Oil's answer raised a set-off defense (based on indemnification for the fine paid to ODNR and attorneys' fees incurred in responding to ODNR's compliance notice). Discovery Oil's counterclaim alleged breach of contract (regarding the clauses on indemnification and compliance with all laws) and set forth a claim of civil liability for criminal conduct under R.C. 2307.60 and R.C. 2307.61.

**{¶7}** Both parties filed a summary judgment motion. In pertinent part, Discovery Oil said it was entitled to contractual indemnification while Wildcat Drilling emphasized the failure to provide notice of the ODNR compliance proceedings so they would have an opportunity to defend against the fine (and claimed the amount of the settlement was unreasonable).

**{¶8}** On January 5, 2017, the trial court granted summary judgment in favor of Wildcat Drilling on the unpaid invoice and granted summary judgment to Discovery Oil for indemnification. Discovery Oil was ordered to pay $190,350.37 with credit for the indemnified amount (the $50,000 fine plus $14,150.09 for expenses incurred in the compliance proceedings) for a total judgment of $126,200.28 (with prejudgment interest from February 23, 2015).

**{¶9}** Both parties appealed to this court, and the appeals were consolidated. Discovery Oil filed four assignments of error, one of which argued the trial court should have allowed the statutory claim to proceed as they demonstrated Wildcat Drilling's civil liability for a criminal act. As to the appeal by Discovery Oil, this court overruled the assignments of error and affirmed the summary judgment in favor of Wildcat Drilling. *Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*, 2018-Ohio-4015, 121 N.E.3d 65, ¶ 52 (7th Dist.).

{¶10} Wildcat Drilling's assignment of error contested the trial court's order to indemnify Discovery Oil for the fine because they were not provided notice before the settlement meeting. They argued this deprived them of the opportunity to defend against an unreasonable agreed fine, citing the requirements set forth in the Supreme Court's *Globe* case. Discovery Oil responded by arguing the *Globe* requirements applied to common law indemnification, not contractual indemnification.

{¶11} We concluded Discovery Oil was not entitled to indemnification because Wildcat Drilling "was not notified of the ODNR meeting or given the opportunity to appear at the meeting." *Id.* at ¶ 69. As to Wildcat Drilling's appeal, we reversed the summary judgment and modified the damage award to eliminate the credit for indemnification. *Id.* at ¶ 71. Discovery Oil appealed our December 28, 2018 decision to the Ohio Supreme Court.

Supreme Court Remand

{¶12} The Supreme Court accepted the following proposition of law: "Contractually-negotiated indemnification clauses are not subject to the common law *Globe* indemnification requirements." *Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*, 164 Ohio St.3d 480, 2020-Ohio-6821, 173 N.E.3d 1156, ¶ 10. The issue before the Court was said to be whether the *Globe* requirements (for determining indemnification rights after a settlement without the indemnitor's involvement) "apply when the parties' rights are governed by a contract that includes an indemnification provision." *Id.* at ¶ 11.

{¶13} In the cited *Globe* case, the Court observed an indemnitee's voluntary payment after a settlement does not negate the right to indemnification if: (1) proper and timely notice was given to the indemnitor; (2) the indemnitor was legally liable to respond; and (3) the settlement was fair and reasonable. *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944). The Supreme Court applied the requirements in later cases and now considers them "common-law requirements in Ohio." *Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 13 (expressed in the lead opinion and recognized in the third opinion).

{¶14} As reviewed in more detail below, the resulting Supreme Court opinions in *Wildcat Drilling* were split along various lines: (1) lead opinion where three justices reversed and remanded to trial court with instructions; (2) dissenting in part but also concurring in judgment only as this justice wished to remand on a different issue; (3) dissenting opinion where two justices wanted to reverse and allow indemnification; and (4)

dissenting opinion where one justice wanted to affirm our decision finding there was no right to indemnification in this case. Four justices agreed the *Globe* requirements may apply to contractual indemnification depending on the language in the agreement. *Id.* at ¶ 13 (the lead opinion, where three justices said the intent to abrogate the common law must be clear), ¶ 44 (the fourth opinion, where a justice said the intent to abrogate the common law must be done "expressly, not impliedly").

**{¶15}** The lead opinion concluded a contractual indemnification clause in a contract does not abrogate the common law requirements unless the intent to do so is "clearly indicated." *Id.* at ¶ 14. "If the language used in the parties' contract evinces a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements, the contract should be applied as written and the indemnitor must indemnify the indemnitee under the terms of the agreement." *Id.* at ¶ 14. These justices explained this does not mean the contract must contain an "explicit rejection of the common law" in order to abrogate the common law set forth in *Globe*. *Id.* at ¶ 16 (and this does not mean the common law can supplant negotiated terms). They rejected the third opinion's assumption the parties intended to abrogate the common law from the mere existence of a contractual indemnification clause. *Id.*

**{¶16}** As to the contract at issue, the lead opinion made the following observation: "The contract here does not say unequivocally that Wildcat and Discovery intended to abrogate Ohio's common-law indemnification requirements. Nor does it say that Discovery can voluntarily settle a claim without first giving Wildcat notice of the claim or that Discovery can settle a claim for any amount it chooses, even if that amount is unreasonable." *Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 15. However, the opinion then said "talismanic or magical language" is not required in order to abrogate the common law because the parties' intent is determined by the contractual language. *Id.* These justices declined to decide in the first instance whether the contract here contained a clear intent to abrogate the common law. *Id.*

**{¶17}** In reversing our decision applying *Globe* and remanding to the trial court, the lead opinion concluded:

> Here, no court has analyzed the parties' contract to determine if it evinces a
> clear intent to abrogate the common-law *Globe Indemn. Co.* requirements.

Case No. 21 MA 0070

The trial court's judgment entry contains no analysis on that issue. The trial court simply concluded that Discovery is entitled to indemnification. The court of appeals concluded that the *Globe Indemn. Co.* requirements apply regardless of the terms of the parties' contract. We decline to conduct that analysis in the first instance and limit our review to the proposition of law that we accepted. We remand the matter to the trial court for further proceedings so that it may consider whether the parties intended to abrogate the common-law requirements on indemnification.

Because the Seventh District Court of Appeals applied the *Globe Indemn. Co.* requirements here without considering whether the parties abrogated those requirements in their contract, we reverse its judgment. Because no court has interpreted the parties' contract to determine if it expresses a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements, we remand this matter to the trial court for further proceedings.

*Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 17-18.

**{¶18}** The second opinion dissented claiming *Globe* was an inapplicable tort opinion and the requirements listed were mere "concluding observations" which constituted dicta and which did not cover an express indemnification clause. *Id.* at ¶ 19, 23 (Kennedy, J.). Yet this justice also concurred in judgment only as she wanted to reverse and remand on a different issue. *Id.* at ¶ 19-31.

**{¶19}** In the third opinion, two justices opined, "the requirements set forth in *Globe Indemn. Co.* do not apply when the parties' rights are governed by an express indemnification provision in a contract, as the inclusion of such a provision is a clear intent to derogate from the common law." *Id.* at ¶ 40 (Fischer, J.) (noting the parties did not raise an ambiguous or unlawful contract). They believed our decision should be reversed and Wildcat Drilling should be ordered to indemnify Discovery Oil for the fine due to the existence of an indemnification clause. *Id.* at ¶ 41.

**{¶20}** The final opinion voted to affirm our decision finding Wildcat Drilling was not liable for indemnification under *Globe*. *Id.* at ¶ 43-45 (Donnelly, J.). This justice said *Globe* applied to indemnification clauses *unless* the contract "expressly" announced those

requirements were overridden. *Id.* at ¶ 44 (disagreeing with the lead opinion's instruction that a clear intent to abrogate can be implied).

<u>After the Remand</u>

**{¶21}** Wildcat Drilling filed a motion for summary judgment on remand, stating the narrow issue before the trial court was whether the contract expressed a clear intent to abrogate the common law requirements in *Globe*. Wildcat Drilling urged the contractual language did not express such intent. It was noted the contract required Wildcat Drilling to defend and hold Discovery Oil harmless from claims, but it would be impossible to defend Discovery Oil without being provided with notice before a settlement. It was also pointed out that this court already found Discovery Oil failed to provide notice, which was not challenged in the Supreme Court, citing *Wildcat Drilling*, 7th Dist. No. 17 MA 0018 at ¶ 64, 69.

**{¶22}** Discovery Oil's response agreed the remand was to determine if there was clear intent in the contract to abrogate the common law *Globe* requirements. Discovery Oil claimed the Supreme Court did not decide the issue because there were still factual issues in the case. Even if *Globe* applied, they alternatively claimed there were genuine issues of material fact as to: whether the common law notice requirement was satisfied; whether Wildcat Drilling is civilly liable for criminal conduct and thus for statutory damages due to an intervening decision; and whether there should be ramifications where it had been discovered (during a suit pending in another county) that a company related to Wildcat Drilling was holding Discovery Oil's other funds. It was also claimed Wildcat Drilling's motion for summary judgment on remand was improper as it lacked citations to the record and was accompanied by a deficient affidavit.

**{¶23}** On June 30, 2021, the trial court issued an entry responding to the Supreme Court's remand. The court concluded the contractual language did not evince a clear intent to abrogate the common law requirements in *Globe*. As the common law notice requirement applied, the court granted summary judgment to Wildcat Drilling on Discovery Oil's indemnification claim. Discovery Oil filed the within appeal, setting forth five assignments of error.

<u>ASSIGNMENT OF ERROR 1: NO CLEAR INTENT TO ABROGATE</u>

**{¶24}** Discovery Oil's first assignment of error provides:

"The trial court erred in granting summary judgment where there was a genuine issue of material fact as to whether the parties' contractual language evinced an intent to abrogate the common law indemnification requirements."

**{¶25}** The parties agree the Ohio Supreme Court remanded for the trial court to determine whether the contract language evinces a clear intent to abrogate the common law indemnification requirements in *Globe*. This is a legal question. Nevertheless, Discovery Oil says it is a factual question and begins by arguing reasonable minds could come to different conclusions as to whether the contractual language evinced an intent to abrogate the common law indemnification requirement, suggesting we should resolve doubts in favor of the non-movant under the standard summary judgment test applicable to genuine issues of material fact.

**{¶26}** However, this is a misinterpretation of the law as applicable to the test Discovery Oil acknowledges should be applied. If (as Discovery admits) the common law indemnification requirements are inapplicable only when a contract lacks a clear intent to abrogate them, then *the common law requirements must be applied when the contract does not contain a clear intent to abrogate them*. Therefore, in cases where the intent to abrogate is not clear in the contractual language, the case does not proceed to trial on the question of whether the parties truly intended to abrogate the common law requirements.

**{¶27}** Discovery Oil says if there were no genuine issues of material fact as to the contract language, then the Supreme Court would have made the legal decision itself rather than remanding. However, the lead opinion of three justices explained, "no court has analyzed the parties' contract to determine if it evinces a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements." *Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 17.[1] The justices believed the trial court assumed indemnification was automatic due to the indemnification clause (an assumption adopted by the third opinion) while the appellate court assumed the *Globe* requirements automatically applied to contractual indemnification (without analyzing whether the contract contained a clear intent to abrogate those requirements). *See id.* at ¶ 7-8, 17-18.

---

[1] We note, as reviewed above in setting forth the Supreme Court opinions, only one justice opined there existed a genuine issue of material fact, but this was on a different issue, which would have favored Wildcat Drilling. The remaining three justices would not have remanded the case at all (with two voting to reverse and one voting to affirm).

{¶28} When remanding for the trial court to consider whether the language used in the contract shows the parties clearly intended to abrogate the *Globe* common law indemnification requirements, the lead opinion specifically said the justices "decline to conduct that analysis in the first instance." *Id.* at ¶ 14-15, 17. Contrary to Discovery Oil's suggestions, it is not unusual for the Supreme Court to accept a case for review in order to issue a legal holding that will apply to all cases but refuse to apply the announced law to the contract (or statute) in the case before it where the lower courts did not do so.

{¶29} The facts to be considered here are the words in the contract that are already in the record. Discovery Oil says reasonable minds could differ on the contractual language. However, contractual language that is reasonably susceptible to more than one meaning is ambiguous and does not show clear intent. *See generally Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St.3d 34, 38, 508 N.E.2d 949 (1987) (contractual language that is reasonably susceptible to more than one meaning is ambiguous); *Beverly v. Parilla*, 7th Dist. No. 04 CO 55, 165 Ohio App.3d 802, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 24 ("language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning").

{¶30} Again, the acknowledged remand instruction was that if the language does not show a clear intent to abrogate the common law requirements, then those requirements must be applied to the indemnification rights in the agreement. *Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 1, 14, 17-18, citing *Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 30 ("Parties to a contract may include terms in derogation of common law, * * * but the intent to do so must be clearly indicated").[2]

{¶31} We turn to the language on indemnification reviewed by the parties. Paragraph 17 of the contract is titled "Responsibility for Loss or Damage." The following "responsibility for pollution and contamination" is set forth thereunder:

[Wildcat Drilling] Liability – [Wildcat Drilling] shall assume full responsibility

for and shall defend, indemnify, and hold [Discovery Oil] and its joint owners

---

[2] This differs from the general rule that extrinsic evidence can be used if the intent is unclear. *See Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314, 667 N.E.2d 949, 952 (1996) (or if circumstances surrounding the agreement give plain language special meaning).

harmless from and against any loss, damage, expense, claim, fine and penalty, demand, or liability for pollution or contamination, including control and removal thereof, that ordinates on or above the surface of the land or water from spills, leaks, or discharges of * * * liquids or solids in possession and control of [Wildcat Drilling]. These obligations are assumed without regard to the negligence of any party or parties.

Contract at ¶ 17.9.1.   Under the subtitle "Indemnity Obligations," the contract further provides in pertinent part:

Except as otherwise expressly limited in this Contract, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under the terms of this Contract will be without limit and without regard to the cause or causes thereof (including pre-existing conditions), strict liability, or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.

Contract at ¶ 17.11.

**{¶32}**  Discovery Oil points out magic language, such as an explicit rejection of the common law, is not required.  *See Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 15-6.  They rely on two examples (of implied intent) cited in *Taylor Quality*, which the Supreme Court issued the same day our case was remanded.  *See Total Quality Logistics, LLC v. JK & R Express, LLC*, 164 Ohio St.3d 495, 2020-Ohio-6816, 173 N.E.3d 1168, ¶ 17-18 (noting the contract similarly did not expressly say the common law was abrogated and pointing out talismanic language was not required to abrogate the common law).

**{¶33}**  In the cited *Worth* case, a contract provided the employee the right to retain counsel of choice at the company's expense to represent the employee in connection with the initiation or defense of any litigation or legal action.  The Supreme Court held the employee was entitled to indemnification for attorney's fees in his unsuccessful action on an employment contract, as the contract did not condition indemnification on the employee's success.  *Worth v. Huntington Bancshares Inc.*, 43 Ohio St.3d 192, 198-199, 540 N.E.2d 249 (1989).  There was no argument on notice (and the contract specifically said the employee could retain counsel of his own choice for litigation).

{¶34} In the cited *Glaspell* case, a use agreement said the cable company was required to indemnify the telephone and power companies for any loss they may suffer by reason of the installation, maintenance, or use of the cable company's equipment on the poles. A cable company employee sued the telephone and power companies claiming negligent maintenance of the pole. The Supreme Court held the cable company was liable to indemnify the telephone and power companies even though the agreement did not specifically say they could be indemnified for loss caused by their own negligence. *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47, 505 N.E.2d 264 (1987) ("What was intended by the parties, as evidenced by the words utilized in the agreement at issue, was that in exchange for rights of access to appellants' facilities, appellee was obligated to bear all risk of additional harm which might occur in connection with appellee's right of access.").

{¶35} The various companies in *Glaspell* were all parties to the employee's suit. There was no settlement without an indemnitor's involvement, and thus, there were no *Globe* issues with notice or reasonableness. (We also note the contract in the case at bar specifically states the indemnity obligation applies without regard to a party's negligence; although, that is not the issue here.)

{¶36} Returning to the issue of whether this particular contract clearly indicates the *Globe* requirements have been eliminated, Discovery Oil suggests the intent to abrogate the common law is evinced in the language of ¶ 17.11, which states the parties intend all indemnity obligations assumed under the contract terms will be "without limit" and which requires Wildcat Drilling to "assume full responsibility" and indemnify for "*any* loss, damage, expense, claim, fine and penalty, demand, or liability * * *." (Emphasis added.)

{¶37} Wildcat Drilling emphasizes any intent to eliminate the common law requirements expressed in *Globe* was not *clear*. In fact, Wildcat Drilling says the indemnification clause shows a clear intent to maintain the notice requirement because *it requires Wildcat Drilling to defend Discovery Oil*.

{¶38} We conclude the contract contains no reference to or indication of the right to settle without providing notice to Wildcat Drilling. The statement in ¶ 17.11 that the indemnity obligations assumed under the terms of the contract will be "without limit" does not *clearly* indicate indemnity is irrespective of the common law requirement of providing notice to a party obligated to respond (and a subsequent fair settlement). (See full quote

supra).  Pre-settlement notice is not clearly akin to a "limit" on a contractual indemnity obligation.  In other words, contractual language stating the indemnification *obligations* are "without limit" would not clearly indicate the indemnitor is not entitled to pre-settlement notice.

**{¶39}** In any event, the "without limit" language in ¶ 17.11 is modified by the introductory clause, "Except as otherwise expressly limited in this Contract * * *."  Contrary to Discovery's Oil suggestions, the use of the word "any" before "fine" in ¶ 17.9.1 does not *clearly* indicate an intent to abrogate the common law requirements (for the indemnitee to give notice to the indemnitor before entering a fair settlement without the indemnitor's involvement).  And, the cited sentence in ¶ 17.9.1 begins by specifically stating Wildcat Drilling "shall assume full responsibility for and *shall defend*, indemnify, and hold [Discovery Oil] harmless * * *."  (See full quote supra).  As Wildcat Drilling points out, it was impossible to defend Discovery Oil when notice was not provided at a time when a defense could be presented.

**{¶40}** The trial court correctly held the contract does not evince a clear intent to abrogate the common law requirements in *Globe*.  In fact, the implied intent clearly shows the notice requirement was being maintained because the obligation to defend requires notice.  This assignment of error is overruled.

ASSIGNMENT OF ERROR 2:  ADEQUACY OF NOTICE

**{¶41}** Discovery Oil's second assignment of error contends:

"The trial court erred in granting summary judgment because, even assuming, arguendo, that the contractual language fails to evince an intent to abrogate the common law indemnification requirements, there is a genuine issue of material fact as to whether Discovery Oil and Gas satisfied the common law indemnification requirements."

**{¶42}** In the fact section of Discovery Oil's brief, it is noted the trial court's June 30, 2021 judgment on remand did not say Discovery Oil failed to comply with the *Globe* requirements.  Discovery Oil contends there remains a genuine issue of material fact on whether Wildcat Drilling was provided timely and proper notice before settlement.  Discovery Oil raises constructive notice because Wildcat Drilling personnel may have been present when a sample was taken by ODNR.  It is also claimed that Wildcat Drilling could have interjected a defense to ODNR after it learned of the compliance issue from someone

else on March 23, 2015, which was after the March 3, 2015 settlement meeting but before Discovery Oil paid the agreed-upon fine (via a check dated April 9, 2015) and executed the settlement agreement.

**{¶43}** Wildcat Drilling responds by emphasizing this court already ruled on the notice issue and the Supreme Court remanded to the trial court for one purpose: to determine if the contract contained a clear intent to abrogate the common law indemnification requirements set forth in *Globe*. They urge this limited remand meant the appellate court's decision would stand if the trial court determined the contract did not contain a clear intent to abrogate the common law.

**{¶44}** In the first appeal to this court, we applied the common law requirements set forth in *Globe* and concluded Discovery Oil was not entitled to indemnification because "Wildcat was not notified of the ODNR meeting or given the opportunity to appear at the meeting." *Wildcat Drilling*, 2018-Ohio-4015 at ¶ 69. We observed, "Wildcat was not fined by ODNR and was not privy to the meeting between Discovery and the ODNR regarding the fine." *Id.* at ¶ 68. We also pointed out Discovery Oil admitted it "intentionally did not inform Wildcat about the meeting with ODNR to settle the fine." *Id.* at ¶ 64 (noting an affidavit acknowledged the unilateral decision of Discovery Oil to engage in settlement negotiations alone based on a belief Wildcat Drilling's involvement would escalate tensions with the ODNR and negatively affect the settlement). Based on the lack of proper and timely notice, we reversed the trial court's decision granting summary judgment for Discovery Oil on the matter of indemnification and modified the damage award to eliminate Wildcat Drilling's indemnity for the fine. *Id.* at ¶ 71.

**{¶45}** On the indemnification issue, Discovery Oil sought to appeal our decision that the common law requirements were applicable to a contractual indemnification clause. Only the following proposition of law was accepted by the Supreme Court: "Contractually-negotiated indemnification clauses are not subject to the common law *Globe* indemnification requirements." *Wildcat Drilling*, 164 Ohio St.3d 480 at ¶ 10. (Other propositions of law were not accepted for review.)

**{¶46}** When subsequently arguing in support of their sole remaining proposition of law, Discovery Oil attempted to append the following additional argument: even if *Globe* applied, there were genuine issues of material fact as to whether Wildcat Drilling had notice

prior to Discovery Oil's payment of the fine or execution of the final settlement agreement and whether the settlement was fair and reasonable. (Discovery Br. in S.Ct. at 18-19, fn. 2). However, this argument was not contained in a proposition of law accepted for review by the Supreme Court.

{¶47} As acknowledged by the parties, the Supreme Court's remand instructed the trial court to evaluate whether the contract contained a clear intent to abrogate the common law requirements in *Globe* as the Court said no lower court had specifically ruled on that issue. The trial court thereafter concluded there was no clear intent to do so. There was no need for the trial court to evaluate compliance with the common law notice requirement in *Globe* as this court had already ruled on that specific issue.

{¶48} Our specific decision finding a lack of proper notice was not set forth as a proposition of law in the appeal to the Supreme Court or reviewed by the Court. Moreover, there was no instruction for the trial court on remand to consider the issue of whether notice was properly and timely provided prior to settlement. Had the trial court done so, it would have exceeded the scope of the Supreme Court's limited remand. As set forth in the prior assignment of error, the decision to remand rather than ruling in the first instance did not suggest the justices found issues of material fact remained in the case.

{¶49} The trial court implicitly maintained this court's holding (on a lack of proper and timely notice) when it granted summary judgment to Wildcat Drilling on remand by concluding the contract contained no clear intent to abrogate the common law. The law of the case doctrine compels "trial courts to follow the mandates of reviewing courts" and binds the trial court "to adhere to the appellate court's determination of the applicable law" as the court "is without authority to extend or vary the mandate given." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hawley v. Ritley*, 35 Ohio St.3d 157, 160, 519 N.E.2d 390 (1988).

{¶50} The Supreme Court did not consider the issue of whether pre-settlement notice was lacking, but this court did. And, our decision on lacking notice was not accepted as a proposition of law (or even offered as one); nor was it mentioned in the remand. Discovery Oil was essentially asking the trial court to disagree with this court's holding

without providing a justifying principle (such as the intervening decision principle it raises in the fourth assignment of error on a different claim). The trial court properly maintained our decision on lacking notice upon answering the sole remanded question.

{¶51} Even if there is some unvoiced argument that the notice issue we addressed would have become non-final on remand (as it was a holding that sequentially falls after the remanded threshold issue), the trial court did not err in refusing to vary from the scope of the remand and to maintain the appellate court's decision on whether adequate pre-settlement notice was provided. *See State ex rel. Natl. Elec. Contrs. Assn. v. Ohio Bur. of Emp. Serv.,* 88 Ohio St.3d 577, 579, 728 N.E.2d 395 (2000) (issues beyond the scope of the remand are beyond the scope of the next appeal). In addition, there is no reason for this court to reconsider that specific holding from the prior appeal of this case. *See Wildcat Drilling*, 2018-Ohio-4015 at ¶ 55-58, 63-64, 68-71. For all of the foregoing reasons, this assignment of error is overruled.

## ASSIGNMENT OF ERROR 3: AFFIDAVIT

{¶52} Discovery Oil's third assignment of error alleges:

"The trial court erred in granting summary judgment where Wildcat's Motion for Summary Judgment on Remand was supported only by a deficient affidavit."

{¶53} Discovery Oil claims the affidavit attached to Wildcat Drilling's motion for summary judgment *filed after the Supreme Court's remand* did not set forth specific facts or indicate it was made on personal knowledge (as it merely said the facts in the motion were "true to the best of my knowledge"). *See* Civ.R. 56(E) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.").

{¶54} There is "no requirement that a party who moves for summary judgment must support the motion with affidavits negating the opponent's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 291- 292, 662 N.E.2d 264 (1996). Still, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and *identifying those portions of the record* before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis added.)

Case No. 21 MA 0070

*Id.* at 292. Relying on this principle, Discovery Oil also complains the motion filed by Wildcat Drilling after remand did not cite to the record.

**{¶55}** However, this assignment of error is misguided. Initially, we note Wildcat Drilling's motion after remand referred to the contractual indemnification provisions. Although it did not specify where the contract was located in the record, the motion reviewed the published legal decisions by this court and the Supreme Court in this very case, which quoted the contractual indemnification provisions.

**{¶56}** On this point, the parties agree the case was before the trial court on remand with instructions to answer the question of whether the contract evinced a clear intent to abrogate the common law indemnification requirements in *Globe.* As Wildcat Drilling points out, the trial court already had before it the prior summary judgment motions with citations to the record and evidence (including the contract) from the proceedings prior to the appeal and remand. The remand was fundamentally based on those prior motions.

**{¶57}** A motion for summary judgment was not even required after remand. Wildcat's post-remand filing functioned as a way to prompt the trial court to respond to the remand and was essentially a brief on remand to guide the trial court through its obligations while presenting legal arguments on the remand as applied to the facts already in the record. An affidavit was not required in order to perform this function. All statements in the motion after remand either were already in the record or were legal statements. This assignment of error is without merit.

ASSIGNMENT OF ERROR 4: INTERVENING DECISION

**{¶58}** Discovery Oil's fourth assignment of error argues:

"The trial court erred in granting summary judgment because the intervening decision in *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 162 N.E.3d 603 creates a genuine issue of material fact as to whether Wildcat is civilly liable to Discovery Oil and Gas pursuant to R.C. 2307.60 and R.C. 2307.61."

**{¶59}** To avoid the restrictions of contractual indemnification (including the common law requirements) and to seek enhanced damages, Discovery Oil reasserts its statutory claim of civil liability for a criminal act. Discovery Oil alleges Wildcat Drilling committed a criminal offense by using brine at the well, citing R.C. 1509.22(A) and R.C. 1509.99.

{¶60} R.C. 1509.22(A) prohibits a person from causing brine to be placed in ground water, the land, or surface water if it causes or is reasonably anticipated to cause damage or injury to public health or safety or to the environment. Division (A) of R.C. 1509.99 generally sets a fine to be imposed on "[w]hoever violates sections 1509.01 to 1509.31 of the Revised Code or any rules adopted or orders or terms or conditions of a permit issued pursuant to these sections for which no specific penalty is provided in this section * * *." Division (C) then specifically provides that a person who "knowingly" violates R.C. 1509.22(A) or rules issued under R.C. 1509.22(C) (including brine) shall be fined $10,000 or imprisoned for six months, or both for a first offense, with a negligent violation subject to a fine of not more than five thousand dollars. R.C. 1509.99(C). "The prosecuting attorney of the county in which the offense was committed or the attorney general may prosecute an action under this section." R.C. 1509.99(D). *Compare* R.C. 1509.33(D) (providing a "civil penalty" for a violation of R.C. 1509.22(A) of not less than two thousand five hundred dollars nor more than ten thousand dollars for each violation).

{¶61} In asserting civil liability for a criminal act, Discovery Oil's counterclaim sought damages under R.C. 2307.60 and R.C. 2307.61. The first statute provides in part:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

R.C. 2307.60(A)(1). The next civil liability statute provides in part:

> If a property owner brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property, the property owner may recover as follows: * * * (b) Liquidated damages * * * (ii) Three times the value of the property at the time it was willfully damaged or was the subject of a theft offense * * *.

R.C. 2307.61(A)(b)(ii).

**{¶62}** The trial court's January 5, 2017 summary judgment rejected Discovery Oil's statutory claim, stating the record did not show Wildcat Drilling was convicted of any crimes related to its drilling activities (and there was no theft claim). Discovery Oil's second assignment of error in its first appeal to this court alleged the trial court erred in granting summary judgment to Wildcat Drilling on the issue of whether Discovery Oil was entitled to damages under R.C. 2307.60 and 2307.61. This court overruled the assignment of error and upheld the entry of summary judgment for Wildcat Drilling on the statutory claim without utilizing the trial court's rationale about a conviction. *Wildcat Drilling*, 2018-Ohio-4015 at ¶ 38-44 (stating the counterclaim was not based on damage to property or theft as required by R.C. 2307.61 or a criminal act that injured person or property as required by R.C. 2307.60).

**{¶63}** Discovery Oil's memorandum in support of jurisdiction filed in the Ohio Supreme Court sought to raise the following proposition of law: "A criminal conviction is not required to establish a claim under R.C. 2307.60, nor does a criminal act need to be 'proved' to overcome summary judgment on a claim brought pursuant to R.C. 2307.60." In support, Discovery Oil cited the Supreme Court's then-pending *Buddenberg* case on the issue of whether a civil cause of action under R.C. 2307.60 for injuries based on a "criminal act" requires an underlying criminal conviction. The Court refused to accept jurisdiction over this proposition of law (accepting only the indemnification issue, which we addressed in the first assignment of error).

**{¶64}** The Supreme Court then released *Buddenberg,* holding a conviction is not required under R.C. 2307.60. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 162 N.E.3d 603. Discovery Oil thereafter filed a motion asking the Supreme Court to apply the holding to its pending appeal and to remand for further proceedings on the statutory claim. (8/25/20 Mot.). Wildcat Drilling's response pointed out the Court already refused to accept a proposition of law on that issue and said the appellate court found the statute inapplicable for reasons other than the lack of a criminal conviction; e.g., the counterclaim did not involve injury to person or property under R.C. 2370.60 just as it did not involve property damage or theft under R.C. 2370.61. (9/4/20 Resp. at 1-3). The Supreme Court implicitly denied Discovery Oil's motion as the statutory claim was not

addressed when the opinion was released four months later on the only proposition of law accepted for review (applicability of common law indemnification requirements).

{¶65} After remand, Discovery Oil's brief in opposition asked the trial court to reconsider the prior summary judgment decision on the statutory claim of civil liability for a criminal act, generally claiming they suffered damage to property and citing the Supreme Court's *Buddenberg* holding that a criminal conviction is not required under R.C. 2370.60. It was posited that our prior decision in this case (affirming the summary judgment for Wildcat Drilling on this issue) was subject to an exception to the law of the case doctrine, which applies when an intervening decision of the Ohio Supreme Court is inconsistent with the law pronounced in the case at bar.

{¶66} The trial court implicitly rejected this invitation and ruled only on the remanded issue (as we discussed under the first and second assignments of error). Discovery Oil now asks this court to apply the intervening decision exception to the law of the case doctrine.

{¶67} The law of the case doctrine states "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). As mentioned in the second assignment of error, "the doctrine functions to compel trial courts to follow the mandates of reviewing courts" and "where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law" and "is without authority to extend or vary the mandate given." *Id.* at 3-4.

{¶68} Nevertheless, the doctrine is "a rule of practice rather than a binding rule of substantive law," and there is an exception for "extraordinary circumstances, such as an intervening decision by the Supreme Court" in which case the lower court can vary from the appellate court's prior mandate in the case as it is bound to take notice of the new Supreme Court law. *Id.* at 3, 5; *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 1, 15, 17, 23.

{¶69} First, we note the alleged intervening decision dealt with whether a conviction was required under R.C. 2307.60(A). *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-

Ohio-3832, 161 N.E.3d 603 ¶ 6-14.  In addition to citing R.C. 2307.60, Discovery Oil continues to cite R.C. 2307.61 (the statute allowing the recovery of treble damages by "any person who willfully damages the owner's property or who commits a theft offense") without explaining how *Buddenberg* would affect our decision on that particular statute.  We clearly found R.C. 2307.61(A) inapplicable because it is limited to a claim of (willful) property damage or a theft offense and Discovery Oil's claims were not premised on damage to property or a theft offense.  *Wildcat Drilling*, 2018-Ohio-4015 at ¶ 40-42, citing R.C. 2307.61(A) (which also requires the cause of action to be brought under R.C. 2307.60).  We also cited a case holding a criminal *conviction* is not required.  *Id.* at ¶ 40, citing *CitiMortgage Inc. v. Rudzik*, 7th Dist. Mahoning No. 13 MA 20, 2014-Ohio-1472.

{¶70}  The additional statutory recovery in R.C. 2307.61 says it only applies when "a property owner brings a civil action pursuant to division (A) of 2307.60 of the Revised Code."  In discussing the latter section, we said R.C. 2307.60 required the plaintiff to be "injured in person or property" by a criminal act and Discovery Oil's action was not premised on a criminal act that injured Discovery Oil in person or property.  *Wildcat Drilling*, 2018-Ohio-4015 at ¶ 43.  We pointed out Discovery Oil's counterclaim was based on breach of contract and the use of brine in drilling, which resulted in a fine and the subsequent failure to indemnify.  Then, we referred to Wildcat Drilling's inability to challenge or defend against the action initiated against Discovery Oil by the ODNR, and we pointed to the lack of "evidence that a criminal act was ever proved."  *Id.*

{¶71}  Again, the Ohio Supreme Court declined to review Discovery Oil's proposition of law involving the claim of civil liability for a criminal act.  The Court made this decision notwithstanding Discovery Oil's citation to the Court's pending *Buddenberg* case (in the memorandum in support of jurisdiction and in the motion filed in the Supreme Court after the release of *Buddenberg*).  As noted supra, Wildcat Drilling's response emphasized to the Supreme Court that we did not refer to the lack of a conviction.  The response also said we set forth more than one rationale in support of the decision, reading our decision as alternatively stating there was no "injury in person or property" alleged or demonstrated by

summary judgment evidence. Wildcat Drilling maintains this argument in the appellee's brief herein.[3]

**{¶72}** In any event, *Buddenberg* was a response to a federal certified question on the specific query of whether a criminal conviction was required for the statutory civil action, and our decision in the case at bar did not hold that a criminal conviction was required. Discovery Oil's appeal was accepted by the Supreme Court on a different subject after refusing to consider the proposition of law on the statutory claim. The case was remanded *by the Supreme Court* on a narrow legal issue unrelated to the statutory claim.

**{¶73}** The situation is not the same as when an appellate court remands on an issue and the Supreme Court issues an intervening decision on the same topic. *Compare Hopkins*, 104 Ohio St.3d 461 (where the Supreme Court issued a decision in another case while the subject case was in the appellate court for the second time on the issue of whether the plaintiff was entitled to insurance coverage); *Jones v. Harmon*, 122 Ohio St. 420, 172 N.E. 151 (1930) (where the appellate court remanded to the trial court for new jury instructions and an intervening Supreme Court decision held those new instructions were incorrect, the trial court incorrectly refused to apply the intervening decision while the case was on remand to the trial court on that same issue).

**{¶74}** Additionally, the plaintiff in *Hopkins* argued res judicata prevented reconsideration of the final judgment on her status as an insured, and the Supreme Court agreed this principle constituted a substantive rule of law (as opposed to the law of the case doctrine which is a rule of practice). *Hopkins*, 104 Ohio St.3d 461 at ¶ 22. The Court then concluded the reason res judicata did not apply in that particular case was because the judgment at issue was not final since the appellate court remanded for the trial court to decide additional issues on the same topic (availability of coverage) on the same claim. *Id.*

**{¶75}** Here, we did not remand but affirmed the trial court's judgment on the statutory claim, a claim that was not the subject of the appeal to the Supreme Court who remanded on only an unrelated and narrow legal issue. The part of our decision dealing

---

[3] The phrase "injured in person or property" has been read broadly as a general tort law phrase. *See generally Haddle v. Garrison*, 525 U.S. 121, 127, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) (interpreting a federal statute on civil liability for retaliation against a witness); *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 10 (in holding R.C. 2307.60 does more than merely codify Ohio common law stating a civil action does not merge into a criminal prosecution, the Court omitted this phrase when it quoted the statute and broadly said the statute "creates a statutory cause of action for damages resulting from any criminal act").

with a statutory claim for a criminal act was final, and that claim was no longer pending. This is another feature making our case distinguishable from the cases cited. "[I]ssues beyond the scope of a previous remand are beyond the scope of review following a return of the case from remand." *State ex rel. Natl. Elec. Contrs. Assn.*, 88 Ohio St.3d at 579. Accordingly, neither the trial court nor this court were required to reconsider the decision granting summary judgment for Wildcat Drilling on Discovery's Oil claim of civil liability for a criminal act. This assignment of error is overruled.

ASSIGNMENT OF ERROR 5:  DISPUTE IN OTHER COURT

**{¶76}** Appellant's final assignment of error alleges:

"The trial court erred in granting summary judgment because Wildcat has already inappropriately and illegally collected on the alleged debt in the instant case through extrajudicial means."

**{¶77}** In the memorandum in response filed in the trial court after the Supreme Court remand, Discovery Oil said a separate case in Summit County "produced previously unknown information relevant to this matter" and cited *Ohio Valley Energy Systems Corp. v. Discovery Oil and Gas LLC*, Summit C.P. No. CV-2020-05-1510. Supported by an affidavit, the memorandum alleged the plaintiff in the *Ohio Valley Energy* case was Wildcat Drilling's "sister" company who received an assignment of a percentage of the judgment in this case and who retained funds it should have paid to Discovery Oil in the course of a separate business relationship. Discovery Oil claimed in pertinent part that equity should not allow Wildcat Drilling to continue to seek a judgment in this case where a related company essentially used "extrajudicial means" to "collect" on the judgment. According to Discovery Oil, there was a genuine issue of material fact as to whether "credit" should be given in this case based on the information learned in the Summit County case.

**{¶78}** On appeal, Discovery Oil alleges the entry of summary judgment was improper because "it is still unclear what precise amounts were earned" by Discovery Oil through its business relationship with Ohio Valley Energy or when those amounts were earned. In response, Wildcat Drilling notes it obtained a favorable judgment in the case at bar, no appeal bond was posted, and a party has the right to convey an interest in a judgment. Also, the appeal to the Supreme Court in this case was only on the

indemnification issue, and the judgment on the unpaid invoice far exceeded the potential credit for indemnification.

**{¶79}** In any event, the new allegation against a different company concerned a breach of contract governing Discovery Oil's relationship with that company and was a theory that arose in a separate case. As Wildcat Drilling emphasizes, any withholding of Discovery Oil's funds by a different company is irrelevant to this case as it existed on remand (and should be addressed in the pending Summit County case between the parties in that case). Moreover, the allegation was not pled in the case before us but merely mentioned in a brief on remand.

**{¶80}** Again, this was a remand from the Ohio Supreme Court on a narrow legal issue. It was not the time or place to attempt to prove a non-party failed to pay Discovery Oil for profits from a separate venture. Once the trial court answered the remanded question, there was no obligation to consider new claims or defenses. *See National Elec. Contrs.,* 88 Ohio St.3d at 579 ("issues beyond the scope of a previous remand are beyond the scope of review following a return of the case from remand"); *State v. Kay*, 2nd Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 12 (when a case is remanded for a specific purpose, the mandate is limited and is not a remand to address new issues not raised in the first appeal or specifically included in the order of remand). This assignment of error is without merit.

**{¶81}** For the foregoing reasons, the trial court's judgment is affirmed.


Donofrio, P J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**