[Cite as *Thompson v. Cranberry Bay Homeowners Assn., Inc.*, 2025-Ohio-1113.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROBIN W. THOMPSON, ET AL., | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiffs-Appellants | Hon. William B. Hoffman, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| THE CRANBERRY BAY<br>HOMEOWNERS ASSOCIATION, INC.,<br>ET AL., | Case No. 2024 CA 00040 |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Licking County Court of Common Pleas, Case No. 2022 CV 00571

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 28, 2025

APPEARANCES:

For Plaintiffs-Appellants

MICHAEL J. CASSONE
Cassone Law Offices, LLC
5086 North High Street
Columbus, Ohio 43214

For Defendants-Appellees

AUSTIN M. RICHARDS
Reminger Co., L.P.A.
200 Civil Center Drive, Suite 800
Columbus, Ohio 43215

For Defendants-Appellees
John Bumgardner and the Estate of
Penny A. Bumgardner

MEGAN M. BROWN
Reese Pyle Meyer, PLL
36 North Second Street
Newark, Ohio 43058

*Hoffman, J.*

{¶1}   Plaintiffs-appellants Robin Thompson and Karen Glenn (hereinafter "the Thompsons") appeal the summary judgment entered by the Licking County Common Pleas Court granting summary judgment to Defendants-appellees John Bumgardner, Molly Stone, the Estate of Penny Bumgardner (hereinafter "the Bumgardners"), and the Cranberry Bay Homeowners Association, Inc. (hereinafter "CBHA") on their complaint for declaratory relief and conversion, and granting summary judgment to CBHA on their counterclaim for indemnity.

STATEMENT OF THE FACTS AND CASE

{¶2}   The Thompsons and Bumgardners are both property owners in the Cranberry Bay subdivision of Buckeye Lake.  CBHA is a private homeowners association. In 2007, CBHA was conveyed a strip of shoreline property on Buckeye Lake.  At the time CBHA received the property, various homeowners held licenses to waterfront spaces by which they could access the lake.  Some spaces included previously constructed docks, while others did not.  Around the same time as the property conveyance, CBHA entered into an agreement with the Ohio Department of Natural Resources (hereinafter "ODNR") which enabled CBHA to grant individual licenses to allow property owners to continue to access Buckeye Lake.   These licenses are named Dock Use Indemnity License Agreements (hereinafter "DUILA").  The DUILAs require preapproval of dock construction or modification by the CBHA.

{¶3}   After receiving the land and licensing authority, CBHA began measuring each water space assignment and providing the assignments with a corresponding water space identifier number.  These numbers were incorporated into the DUILAs.  Because

not every water space had a dock at the time, the identifier numbers were assigned only to the water spaces, and not to the docks sitting on some of the water spaces.

{¶4}   As of 2007, Mike Cassidy (hereinafter "Cassidy") held the DUILAs for water spaces identified as P86 and P87.  Adjoining Cassidy's space was P85, which was licensed to the Bumgardners.  Originally, no dock separated P85 and P86.

{¶5}   In 2007, Cassidy requested a modification to his dock which would provide a six-inch expansion of the water space between P86's outer edge and P87's outer edge.  The request was approved by CBHA.  However, during construction, a mistake was made, positioning the dock on P87 in a manner which reduced the space in P86 by four inches.  At the same time, the Bumgardners constructed a narrow stringer dock, known as the "Finger Dock," on P85 where it adjoined P86, thereby creating a barrier between P85 and P86.

{¶6}   In 2019, Cassidy sold his property to the Thompsons.  The Thompsons entered into a DUILA with CBHA for both P86 and P87.  The Thompsons became displeased with the water space in P86, which they found not wide enough to accommodate their jet skis.  The Thompsons identified the Finger Dock as the problem.

{¶7}   CBHA became involved in the dispute, attempting to resolve the problem.  The Thompsons wanted the Bumgardners to shift the Finger Dock further into P85.  After negotiations, the Bumgardners agreed to rebuild the dock on P85, farther from P86.  At no point in the negotiations did the Thompsons claim to be the owner of the Finger Dock.  When the project was complete, CBHA's records reflected the Finger Dock sat entirely over water space P85, and no dock existed on P86.

**{¶8}** The Thompsons thereafter sought to have the Bumgardners modify the Finger Dock a second time, this time for the installation of rub boards. The Bumgardners refused to submit an application to CBHA for further modification of the Finger Dock.

**{¶9}** The Thompsons filed the instant case seeking declaratory relief, stating the Thompsons are the owners of the Finger Dock and ordering CBHA to approve the installation of rub boards on the Finger Dock, seeking damages and injunctive relief for alleged constitutional violations by CBHA, and seeking damages and replevin for the conversion of the Finger Dock by the Bumgardners and CBHA. CBHA later filed a counterclaim seeking damages pursuant to the indemnification agreement in the DUILA signed by the Thompsons.

**{¶10}** The Bumgardners and CBHA moved for summary judgment in their favor on the complaint. CBHA moved for partial summary judgment on their counterclaim as to their right for indemnification. The trial court granted both motions for summary judgment, setting the determination of the amount of attorney fees the Thompsons owed CBHA on the indemnification claim to be determined at a later date.

**{¶11}** The Thompsons appealed the judgment to this Court. We remanded for the limited purpose of allowing the trial court to determine the amount of attorney fees owed by the Thompsons to CBHA under the indemnification agreement. Following a hearing, the trial court awarded attorney fees to CBHA in the amount of $44,694.00.

**{¶12}** It is from the April 12, 2024 and September 25, 2024 judgments of the trial court the Thompsons prosecute their appeal, assigning as error:

I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS TO APPELLANTS' CLAIM FOR CONVERSION.

II. THE TRIAL COURT ERRED BY PERMITTING APPELLEE CBHA TO FILE A COUNTERCLAIM WITHOUT PROPER LEAVE.

III. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS TO APPELLEE CBHA'S CLAIM FOR INDEMNIFICATION.

IV. THE TRIAL COURT ERRED BY AWARDING THE REQUESTED AMOUNT OF ATTORNEY FEES TO APPELLEE CBHA.


I.

**{¶13}** In their first assignment of error, the Thompsons argue the trial court erred by granting summary judgment to CBHA and the Bumgardners on their claim for conversion. We disagree.

**{¶14}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence

or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, *citing Dresher v. Burt*, 1996-Ohio-107.

{¶16} The tort of conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Heflin v. Ossman*, 2005-Ohio-6876, ¶ 20, (5th Dist.), *quoting Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). Thus, the elements required for conversion are: (1) a defendant's exercise of dominion or control;

(2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership. *Id.*  Generally, "[i]n order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner." *Congress Lake Club v. Witte*, 2008-Ohio-6799, ¶ 66 (5th Dist.).  However, a party who consents to the manner in which someone else deals with their property is estopped from bringing a conversion claim. *Ahlers v. Pettinelli,* 2006-Ohio--1199 (8th Dist.).

**{¶17}**  In the instant case, attached to the affidavit of Robin Thompson is a DUILA entered into on October 19, 2019, licensing a dock with plate number 31377, and dock area P86.[1] His affidavit states his understanding was the designation of P86 and 31377 referred to a physical dock and not to water space, and he made payment to CBHA for two physical dock structures.

**{¶18}**  CBHA presented evidence by way of the affidavit of Lisa Powell, president of the CBHA Board of Trustees.  Her affidavit sets forth a dispute arose between the Thompsons and the Bumgardners in 2021 because the Thompsons found water space P86 was not wide enough to fit their two jet skis.  Powell became involved in discussions to find an amicable resolution.  Powell avers in her affidavit at paragraph six:

> At the start of those resolution discussions, I do not recall the Thompsons ever asserting an ownership interest, by way of P86 DUILA, over the Finger Dock.  In fact, at the early stages of discussions, I reviewed

---

[1] This DUILA was entered into prior to the resolution of the dispute between the parties moving the Finger Dock entirely to P85.

a modification proposal, which the Thompsons agreed to, that explicitly identified the Finger Dock as the Bumgardners.'

{¶19} She further identified Exhibit 3, attached to her affidavit, as the modification proposal agreed to by the Thompsons. The document, titled "Proposed Water Space Improvement," identifies the Finger Dock as "Bumgardner's stringer."

{¶20} Linda Sims, Chair of CBHA's Dock Committee, averred in her affidavit the Finger Dock was constructed by the Bumgardners, and Cassidy never asserted ownership of the Finger Dock. She stated in her affidavit she understood the Thompsons and the Bumgardners resolved their dispute by the Bumgardners agreeing to modify their dock area, including repositioning the Finger Dock farther from P86. She averred she measured the water space in the fall of 2021, and her drawings, attached to her affidavit, show the Finger Dock lies entirely over water space P85, while there is no dock structure on P86.

{¶21} The affidavit of John Bumgardner avers in August of 2021, they entered an agreement with the Thompsons to resolve the dispute over the Finger Dock, and at no point did the Thompsons assert ownership over the Finger Dock.

{¶22} While the Thompsons attempt to argue now the identification of P86 and P87 as water space rather than physical dock identification is incorrect and P86 and P87 refer solely to physical dock structures, they have presented no evidence other than Robin Thompson's personal understanding to rebut the evidence presented by CBHA the designations have always referred to the water space assigned to each property owner, regardless of whether or not a physical dock structure exists on such space. Further, the

Thompsons have presented no evidence to rebut the evidence presented by CBHA and the Bumgardners in 2021, the Thompsons acquiesced to the Bumgardners exerting control over the Finger Dock, moving the Finger Dock entirely within the Bumgardners' assigned water space of P85. We find the Thompsons are estopped from bringing a conversion claim against the Bumgardners and CBHA because they consented to the Bumgardners exerting dominion and control over the Finger Dock, moving the dock entirely to P85, the water space leased to the Bumgardners. We find the trial court did not err in granting summary judgment dismissing the Thompson's claim for conversion.

**{¶23}** The first assignment of error is overruled.

II.

**{¶24}** In their second assignment of error, the Thompsons argue the trial court erred in granting CBHA's motion for leave to file a counterclaim. We disagree.

**{¶25}** CBHA filed a counterclaim seeking indemnification from the Thompsons on January 20, 2023. On March 8, 2023, CBHA filed a motion for leave to file the counterclaim instanter. In its motion, CBHA alleged its failure to initially bring the counterclaim was an oversight, as counsel only discovered during the discovery process the Thompsons' allegations were within the purview of the indemnification provision in the DUILA. CBHA argued the parties had discussed extending discovery, and therefore the Thompsons would have ample time to conduct discovery on the indemnification claim. CBHA further set forth its failure to seek leave to file the counterclaim at the same time it earlier filed its counterclaim was an inadvertent mistake. The trial court granted the motion for leave to file the counterclaim on May 16, 2023, and the counterclaim was refiled on July 13, 2023.

**{¶26}** Civ. R. 13 provides in pertinent part:

> **(A) Compulsory Counterclaims**. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.
>
> **(F) Omitted Counterclaim.** When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

**{¶27}** A decision to grant a Civ.R. 13(F) motion is solely at the discretion of the trial court, and we will not disturb it unless the ruling was an abuse of discretion. *Guerrini v. Chanell Roofing & Home Improvement, LLC,* 2024-Ohio-585, ¶ 33 (8th Dist.). The term "abuse of discretion" connotes more than an error of law or of judgment; it implies the

court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶28} We find the trial court did not abuse its discretion in granting CBHA's motion for leave to file a counterclaim. The motion set forth the attorney for CBHA did not discover the indemnification clause in the DUILA until the discovery process was underway in the underlying case. Further, the issue presented by the counterclaim was a narrow question involving the interpretation of the indemnification clause in the DUILA, and did not raise a claim requiring extensive discovery or factual development to defend.

{¶29} The second assignment of error is overruled.

III.

{¶30} In their third assignment of error, the Thompsons argue the trial court erred in granting summary judgment on CBHA's counterclaim for indemnification. We disagree.

{¶31} The indemnification clause in the DUILA, agreed to by the Thompsons, provides the Thompsons:

[A]gree to indemnify and save and keep harmless CBHA…against any and all loss, damage[,] or expense including attorney fees which they or any one of them may sustain or be liable for in consequence of the construction, modification and/or use of the Dock and/or Dock Area and/or seawall and/or ingress/egress over the Waterfront Property.

{¶32} First, the Thompsons argue the trial court's decision addressed the DUILA with regard to P85, which is licensed to the Bumgardners. They argue because the

dispute is not over P86, which is licensed to them, they are not required to indemnify CBHA.

**{¶33}** Whether characterized as part of the licensing of P85 or P86, the dispute in this case surrounds the Finger Dock. The Thompsons brought the action against CBHA asking the trial court to declare the rights of the parties as to P86, and to modify the Finger Dock through the installation of rub boards. The request to alter both the boundary lines of the water space and to modify a currently existing dock structure falls directly within the language of the indemnification clause because the dispute involved the construction, modification, and/or use of a Dock Area or Dock Structure.

**{¶34}** The Thompsons next argue pursuant to common law principles of indemnification, the Bumgardners would be liable to indemnify CBHA, but the Thompsons would not be liable for indemnification. However, the instant case involves an express contractual clause of indemnification. The parties may enter into a contractual indemnification clause which abrogates common law indemnification, and in such case, the nature of the indemnification relationship is determined by the terms of the contractual agreement. *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C,* 2020-Ohio-6821, ¶ 14. We find the trial court did not err in applying the contractual language of indemnification rather than common law principles of indemnification.

**{¶35}** The Thompsons next argue CBHA cannot claim indemnification against them for defense against CBHA's own wrongdoing. However, the express language of the DUILA applies to any and all loss sustained, and not solely to CBHA's liability or lack thereof.

**{¶36}** The Thompsons argue because CBHA refuses to acknowledge them as the owner of dock P86, the corresponding DUILA is unacknowledged, rendering any clause therein void. We disagree. CBHA recognizes the Thompsons' DUILA with respect to the water space or "dock area" of P86; CBHA only disputes the ownership of the Finger Dock.

**{¶37}** Finally, the Thompsons argue the indemnification clause applies only to their claim for conversion. The Thompsons argues Count One, seeking a declaration of ownership of the Finger Dock and ordering CBHA to allow them to install rub boards on the dock, and Count Two, seeking damages for constitutional violations by CBHA, fall outside the terms of the DUILA. We disagree. Both counts relate to the construction, modification, and/or use of the Finger Dock, and therefore fall within the language of the indemnification clause.

**{¶38}** We find the trial court did not err in granting CBHA's motion for summary judgment on its counterclaim. The third assignment of error is overruled.

IV.

**{¶39}** In their fourth assignment of error, the Thompsons argue the award of attorney fees is not supported by the evidence presented at the hearing, and further argue CBHA's only witness at the hearing was biased.

**{¶40}** The Thompsons have failed to provide this Court with a transcript of the attorney fee hearing as required by App. R. 9(B). In its entry, the trial court specifically relied on the testimony of CBHA's witness, who the trial court found to be reliable. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's

proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Because we have not been provided a transcript of the hearing, we presume regularity in the trial court's proceedings.

{¶41} The fourth assignment of error is overruled. The judgment of the Licking County Common Pleas Court is affirmed.

By: Hoffman, J.
Baldwin, P.J.
King, J. concur